McLENNAN *v.* GRAHAM.

The claim laws as a remedy for the true owner are cumulative, not exclusive. It follows therefore that a failure to file a claim will not prevent the true owner from asserting his title against the purchaser at a sheriff's sale, when such owner does nothing that is calculated to mislead the purchaser as to the owner's relation to the property and the title.

Argued November 18, — Decided December 16, 1898.

Equitable petition. Before Judge Smith. Telfair superior court. March 19, 1898.

Aaron Graham, administrator of Mitchell Guerry, sold certain land at administrator's sale as the property of the estate of his intestate, and executed a conveyance of the same to the purchaser, Samuel Graham, on February 7, 1893. On or about February 1, 1895, the land was levied on as the property of Aaron Graham individually, under executions against him in favor of McLennan, and a claim was interposed by Samuel Graham. The claimant withdrew this claim on April 17, 1895, but subsequently filed another claim, which, on November 11, 1896, was dismissed by the court for want of prosecution, and the land was again advertised for sale under the same levy, and sold at sheriff's sale to McLennan. A petition to enjoin McLennan from taking possession of the land, and for the recovery of the same, was then filed by William Graham, who held a deed to the land from Samuel Graham, dated April 23, 1895, and recorded March 31, 1897. Upon the trial the court directed a verdict in favor of the plaintiff, and the defendant excepted.

The plaintiff introduced a deed to Mitchell Guerry from a person who was admitted to be the common grantor as to plaintiff and defendant; and the deed of Aaron Graham, as administrator of Mitchell Guerry, to Samuel Graham, and the deed of the latter to William Graham. It was admitted that Aaron Graham was the administrator of Mitchell Guerry. William Graham testified: Mitchell Guerry claimed this land, and was in possession of it when he died. It was understood at the administrator's sale that if witness could raise the money, Sam. Graham was to let him have it. Aaron Graham is the father of witness, and Sam. Graham his brother. Sam. Graham paid

$12 on the land to Aaron Graham as administrator. Sam. Graham agreed for Aaron Graham to lease the land to Rawles, Brooks & Co., for turpentine purposes, which was done, the price of timber to be credited on Sam.'s bill for the land. Witness has settled in full with Sam. for the land; has been in possession of the land ever since he bought it from Sam.; paid $148 for it; got about $40 of the money from the lease to Rawles, Brooks & Co.; chopped boxes for the company at about $16 per month, and cut timber, etc., for the balance; knew that the land had been levied on under fi. fas. under which it has since been sold, and that Sam. Graham had filed a claim to it before witness bought it from him. The reason witness did not file a claim to it was that he did not know it was advertised to be sold. He did not know anything about it until after the sale. He had a talk with the sheriff about Christmas, before the land was sold in January, 1897; and the sheriff told him it would be best to file another claim. Witness had employed an attorney to file a claim for him when the land was advertised for sale several months ago, before the last term of court, and he thought that claim was sufficient. The sheriff went with him to the office of certain other attorneys, to consult them about filing a claim for witness; but he did not employ them, because he could not get the required fee. There was no one in the actual possession of the land during 1896, and witness is not sure whether it was cultivated or not in 1895, at the time this suit was filed. The small field or clearing on the field lay out last year, and there may have been some oak bushes growing on the land. Witness does not think they could have grown that high in less than two years.

Defendant introduced the sheriff's deed to himself, dated January 5, 1897. The entry of levy upon the execution under which the sale was made showed that Aaron Graham was, at the time of the levy, in possession of the premises in dispute. A certified transcript of the minutes of the court, showing the filing of the first claim by Samuel Graham, and the disposition of both claim cases of Samuel Graham, was introduced for the purpose of showing that he had filed a claim to the premises in dispute after the date of his deed to William Graham. A

lease contract made by Aaron Graham to the firm of Rawles, Brooks & Co., dated January 1, 1893, leasing for turpentine purposes all the timber on the premises in dispute, was in evidence. Rawles, a member of that firm, testified, that they paid Aaron Graham for the lease, and were in possession of the land under it, and William Graham had nothing to do with it that witness knew of during the term of the lease. He did not hear of William Graham claiming any interest in the land until after this suit was filed. It was admitted that William Graham went to the sheriff's office on Christmas, 1896, and said he wanted to file a claim to the land, and asked who he could get to file it, and went with the sheriff to the office of certain attorneys to consult them; and, on being told what the attorney's fee would be for filing the claim, said he did not have the money, but would return between then and the sale day and arrange it.

*D. C. McLennan*, for plaintiff in error.   *E. D. Graham*, contra.

COBB, J.   It appears from the record that the present case was tried as one in which both plaintiff and defendant derived title from a common grantor, who was the person who had conveyed the property to Mitchell Guerry. Without holding that this was the correct theory of the case, we deal with it as presented. From this point the plaintiff's chain of title consists of a deed from Aaron Graham, as administrator of Mitchell Guerry, to Samuel Graham, and a deed from Samuel Graham to William Graham, the plaintiff in the present case. The defendant relies upon a deed founded upon a sheriff's sale of the property under an execution against Aaron Graham individually. There is evidence that Aaron Graham was in possession of the property, exercising acts of ownership over the same, but there is no evidence that he ever had title to the land. While his possession continued for a number of years, it was, until February 7, 1893, the date of the deed from him as administrator to Samuel Graham, in his right as administrator; and even though it might be inferred that he remained in possession thereafter, such possession was not of sufficient duration, even if adverse, to constitute a prescriptive title. Upon the

case thus made it is clear that William Graham, who claims under title derived through the administrator's sale, has a superior right to the defendant, who claims under the sheriff's deed founded upon an execution against a person who never had title of any character to the property. It is contended, however, that the plaintiff should have interposed a claim and not have allowed the property to be sold by the sheriff, and that his failure to interpose a claim when he knew that the levy had been made was such a fraud upon the defendant that the plaintiff would be now estopped from setting up his title against the alleged title of the defendant under the sheriff's deed. In the case of *Whittington* v. *Wright*, 9 *Ga.* 23, it was held that the claim laws were cumulative only. Judge Lumpkin in the opinion uses this language: "Our claim laws are cumulative, *permissive* and not *mandatory*. They do not take from the owners of property their right to assert their title by trover or ejectment or trespass against the sheriff, as at common law; and a sale by the sheriff can not divest the owner of his title, unless he does, or omits to do something, and thereby entraps the purchaser." See also *Cox* v. *Griffin*, 17 *Ga.* 249; *Bodega* v. *Perkerson*, 60 *Ga.* 516. If William Graham was the owner of the property, his failure to file a claim, notwithstanding he may have been apprised of the fact of the levy and of the day fixed for the sale, would not interfere with his right to assert his title against the purchaser at the sale, unless he did something that would mislead the purchaser and entrap him into buying under the belief that the property sold was really the property of the defendant in execution. There is nothing in this case which will bring the plaintiff within the rule laid down in Civil Code, § 3823, where it is declared that "one who silently stands by and permits another to purchase his property without disclosing his title is guilty of such a fraud as estops him from subsequently setting up such title against the purchaser." There is no evidence of any statement by William Graham that would mislead the defendant, nor is there any evidence from which a jury would be authorized to find that he had been guilty of conduct which would be calculated to deceive the defendant in any way and create the impression

that he was not claiming the property in his own right, but was acquiescing in its being treated as the property of Aaron Graham. The plaintiff not being precluded, by the failure to file a claim, from setting up his title against the defendant, and having been guilty of nothing which would amount to a fraud upon the defendant, and thereby estop him from claiming the property, the judge did not err in directing the jury to find in his favor. *Judgment affirmed. All the Justices concurring.*